```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF OKLAHOMA
```

TAMMY GAY,                         )
                                   )
            Plaintiff,             )
                                   )
v.                                 )   Case No. CIV-07-088-KEW
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

## OPINION AND ORDER

Plaintiff Tammy Gay (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 22, 1962 and was 44 years old at the time of the ALJ's decision. She completed her education through the twelfth grade. Claimant previously worked as a certified nurse's aid, and as a housekeeper. Claimant alleges an inability to work beginning in March 27, 2003 due to neck, back, and shoulder pain.

### Procedural History

On August 19, 2004, Claimant filed for disability benefits

under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On August 9, 2006, Claimant appeared at a hearing before ALJ Ralph L. Wampler in Ardmore, Oklahoma. By decision dated September 25, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision. On January 24, 2007, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) relying on Claimant's failure to pursue medical treatment without performing the proper analysis required by law; and (2) making a credibility finding which is not supported by substantial evidence.

**Discussion**

Claimant contends the ALJ improperly relied upon Claimant's

failure to obtain medical treatment in denying benefits. The medical evidence is not particularly extensive in this case.

On December 16, 1996, Claimant underwent an MRI of her lumbar spine. The MRI revealed a small sized extrusion at the level of the L5-S1 disc space. The extrusion appeared to be abutting with the nerve root on the left side. (Tr. 166). Between December 21, 1996 and February 2, 2001, Claimant sought medical treatment for lumbar back pain on three occasions. (Tr. 103, 160, 165).

On February 12, 2002, Claimant was attended by Dr. Harry Galoob. Claimant complained of back pain, neck pain, shoulder pain, tingling of the arms secondary to large breast size. At that time Claimant was estimated at 5'1" in height and weighed 188 pounds. Weight gain had caused increasing problems with her breasts. Her bra straps cut into her shoulders to the point that Claimant had to put wash cloths under her straps to help with the discomfort. Claimant experienced tingling in her arms that is relieved when she removes her bra. Many of her symptoms were relieved when she lifts her breasts from her chest. Claimant stated she wears a size 46C bra. Dr. Galoob diagnosed Claimant with bilateral macromastia, shoulder grooving, and kyphosis. (Tr. 147). Dr. Galoob recommended bilateral breast reduction using the liposuction technique or open reduction. Id.

On August 2, 2004, Claimant again was attended by Dr. Galoob.

5

She complained of tenderness of the right breast. Dr. Galoob ordered a mammogram and sonogram. Both of these tests returned negative. Dr. Galoob referred Claimant to a general surgeon for consultation. Id.

On December 29, 2004, Claimant saw Dr. Dennis R. Whitehouse, consultative agency examiner. Claimant complained of low back pain which hurt around her left hip and left thigh. Claimant also stated her shoulders hurt on an occasional basis. Claimant was noted to have a height of 5' 2 1/2" with a weight of 200 pounds. (Tr. 152). Claimant had a full range of motion of her cervical spine with a mild decreased range of motion with flexion to 80 degrees at her lumbar spine. Her neurological examination was "completely within normal limits." Dr. Whitehouse concluded Claimant had chronic low back pain, likely due to her morbid obesity. (Tr. 153).

On January 11, 2006, Dr. James R. Turrentine wrote a letter on Claimant's behalf which stated Claimant had "huge, huge breasts." Dr. Turrentine states Claimant's breasts "hang down to her belly button" and that her bra causes creases in her shoulders. He opines Claimant is too heavy such that her back hurts continuously. Dr. Turrentine recommends that she have a breast reduction. He wrote that Claimant's breasts bother her "24-hours a day, 7-days a week." (Tr. 166A).

For his part, Dr. Galoob wrote a letter dated March 15, 2006, which states he examined Claimant on complaints of neck, back, and shoulder pain. He lifted Claimant's breasts which gave her immediate relief. Dr. Galoob recommends in the letter that Claimant undergo breast reduction, which he believed would help the pain symptoms. (Tr. 167).

At the hearing, Claimant testified she had no insurance or money for the breast reduction surgery. She attempted to receive financial assistance through O.U. Sooners Charity. (Tr. 202). Instead, the surgery was deemed cosmetic and she was charged $25.00 for making application. (Tr. 203).

Claimant testified she has pain in the center of her back at waist level which shoots down her left leg. (Tr. 197). She states she can walk comfortably on a flat surface for around a block. Id. She has to lean forward when sitting upright in a chair with her elbows on the table to relieve back pain. (Tr. 200-201).

In his decision, the ALJ relates the medical records of Drs. Whitehouse and Galoob. (Tr. 20). He concludes that Claimant's complaints of significant limitations in the ability to perform basic work activities is not credible to the extent alleged. The evidence indicates Claimant was terminated from her last employment because she was rude. (Tr. 21).

The ALJ determined Claimant's pain is due to her breast size

and that it could be corrected with surgery. He acknowledged Claimant's testimony that she could not afford the recommended treatment. He found Claimant only takes over-the-counter medication for her alleged pain and that she had not obtained treatment since 2001. The ALJ concludes that the degree of limitation in Claimant's daily activities which she alleged did not meet Claimant's alleged medical conditions, in light of the "relatively weak medical evidence." (Tr. 21).

Ultimately, the ALJ states that Claimant possesses the requisite RFC to perform a full range of sedentary work. He states that in consideration of Claimant's age, education, and work experience, he is directed by the GRIDS at Rule 201.28 to make a finding of non-disability. (Tr. 22).

Claimant first argues that the ALJ improperly rejected Claimant's claim of disability because she could not afford the corrective surgery which would restore her ability to work. As the Commissioner indicates, the ALJ's decision is not based upon the failure of Claimant to obtain medical treatment or her inability to financially afford the reduction surgery. Rather, the ALJ applied the GRIDS after finding she could perform sedentary work which directed a finding that Claimant was not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.28.

Claimant has not asserted in the briefing that application of

8

the GRIDS was inappropriate, other than Claimant asserts the ALJ engaged in an improper credibility analysis. This might imply that Claimant suffered from the non-exertional impairment of pain which would necessarily preclude the application of the GRIDS.

The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Id.

The finding of the ALJ that Claimant's subjective severe pain complaints were not credible is supported by the record. Claimant's treatment for pain was conservative and minimal. Further, Claimant suffered from no nonexertional impairment serious

enough to limit the range of jobs available to her and the ALJ's findings in this regard were supported by substantial evidence. Thus, the ALJ properly relied on the medical-vocational guidelines to demonstrate the existence of substantial gainful work in which Claimant could engage. *See*, <u>Castellano v. Sec. of Health & Human Servs.</u>, 26 F.3d 1027, 1030 (10th Cir. 1994)("reliance on the grids was not error as the ALJ found plaintiff's testimony regarding his pain not fully credible").

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 26th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE